Mr. justice Livingston
 

 delivered the opinion of the Court.
 

 The first question which this Court has to consider is, whether the proceedings, in Chancery were properly admitted in evidence in the Court below.
 

 It is not denied, as a general rule, that a fact which has been directly tried, and decided by-a Court.of competent jurisdiction, cannot be contested again between the same parties, in the same or any other Court. . Hence a verdict ¿nd. judgment of a Court of record, or a decree in Chancery, although not binding on strangers, puts an end to all further controversy concerning the.points thus decided between the parties to such suit. In this, there is and ought to be, no difference between a verdict and judgment
 
 *114
 
 in a Court of common law, and á decree of a Court of equity. They both stand on the same footing, and may be offered in evidence under the same limitations, and it would be difficult to assign a reason why . it should be otherwise. The rule has found its way into every system of jurisprudence, not only from its obvious, fitness and propriety, but because without it, an end could never be put to litigation. It is, therefore, not confined in England or in this country to judgments of the same Court, or to the decisions of Courts of concurrent jurisdiction, but extends to matters litigated before competent tribunals in.foreign countries. It applies to sentences of Courts of Ad-mira^ — to ecclesiastical tribunals — and, in short, to every Court which has proper cognizance of the subject matte , so far as they profess to decide the particular m: tier in dispute. Under this rule, the decree in this case was proper evidence, if it decided, or professed to decide, the same question which was made on the trial at law. For to points which came only collaterally under consideration, or were only incidentally under cognizance, or could only be inferred by arguing from the decree, it is admitted that the rule does not apply. On a reference to the pro-, ceedings at law, and in Chancery, in the case now before us, the . Court is satisfied that the question which arose on the trial of the action of covenant, was precisely the same, if not exclusively so, (although that was not necessary,) as the one which had already been directly decided by the Court of Chancery. The bill, which was ffiled by the present plaintiff in error, states, that on the 23d of Janu-
 
 *115
 

 árf y
 
 1807, which is the date of the agreement on Which the action at law is brought, Hopkins purchased of Lee the estate of Hill and Dale, for which he was to pay $18,000 — that is, $10,000 in military lands at settled prices, and the remainder in bonds, payable in April, 1809. That Lee, in pursuance of this agreement, selected certain military lands in the bill mentioned. That at the time of the purchase of Hill and Dale, it was mortgaged to Rawleigh Colston for a large sum, which Lee had promised to discharge, but that he had failed so to do, in consequence of which, Hopkins had paid the mortgage himself. The complainant then claims a large sum from Lee for having removed this incumbrance, and prays that the defendant may be decreed to pay it, or in default thereof, that the complainant may be authóri-séd, by a decree of the Court, to sell the military lands, which he considered as a pledge in his hands, and out of the proceeds to pay himself. Not a single demand is stated in the bill, except the one arising out of the complainant’s extinguishment of the in-cumbrance, which Lee had taken upon himself to remove.
 

 On Lee’s answer coming in, denying several of the allegations of the bill, the cause is referred to a master commissioner, who, after a long investigation, in the presence of both parties, and the examination of many witnesses, makes a report by which Hopkins is made a debtor of Lee in the sum of $427 77. Ota inspection of this report, it will be seen that the chief, if not the only controversy between thé parties Was, whether Hill and Dale had been relieved
 
 *116
 
 from its incumbrance to Colston, by funds furnished by Lee to Hopkins for that purpose, and that unless that fact had been found affirmatively, a report could not have been made in Lee’s favour. The Court, after, referring to this report, and stating that it had not been, excepted to, proceeds to decree the payment of this balance by the complainant to the defendant, From this summary review of the proceedings in Chancery, the conclusion séems inevitable,- that the chief, if not sole matter in litigation'in that suit, was whether Hill .and Dale had been freed of the incum-brance to Colston, by Lee or by Hopkins, and that the. report and subsequent decree proceeded on the ground, and established the fact, that Lee had discharged it, which was also the only point put in issue by the first plea of the defendant in the actiou of covenant. Noi rule of evidence, therefore, is violated in saying that this decree was properly admitted by the Circuit Court. But if the-decree were admissible, it is supposed that the report of the master ought not to have been submitted-to the jury. The Court, entertains a different opinion. No reason has been assigned why a decision by a. proper and sworn officer of a Court of Chancery, in the presence and hearing of both parties, according to the acknowledged practice and usage of the Court, on . the very matters in controversy, not excepted to by either party, and confirmed by the Court, should not be as satisfactory evidence of any fact found by it, as the verdict of a jury, on which a judgment is af-terwards rendered. The advantage which a verdict may be supposed to possess over a report, from, its
 
 *117
 
 being the decision of twelve, instead of the opinion
 
 of
 
 a single man, is perhaps more than counterbalanced by the time which is allowed to a master for deliberation, and a more thorough investigation of the matters in controversy. But a better and more satisfactory answer is, that it is the usual, known, and approved practice of the Court to whose jurisdiction the parties had submitted themselves. But if this document be witheld from a jury, how are they or the Court to arrive at the grounds of the decree, or a knowledge of the points or matters which have been decided in the cause ? Without it, the decree may be intelligible *, but the grounds on which it proceeds, or the facts which it means to decide, maybe liable to much uncertainty and conjecture. The report, therefore, as well as the decree, was proper evidence, not only of the fact that such report and decree had been made, but of the matter which they professed directly to decide. We are not now called upon to say, whether, in those respects, they were conclusive, as they do not appear to have been offered with that view; but without, meaning t odeny to them such effect, we only say, which is all that the present case requires, that they were competent and proper, in the absence of other testimony, to establish the fact of the removal of the incumbrance by the defendant Lee, from the estate of
 
 Hill and Dale.
 

 In the assessment of damages, the counsel for the plaintiff in errpr, prayed the Court to instruct the jury, that they should take the price of the land, as agreed upon by the parties in the articles of agreement upon which the suit was brought, for their go
 
 *118
 
 vernment. But the Court refused to give this instruction, and directed the jury to take the price of thç lands, at the time they ought to have been conveyed, as the measure of damages. To this instruction the plaintiff in error excepted. The rule is settled in this Court, that in an action by the vendee for a breach of contract on the part of the vendor, for not delivering the article, the measure of damages is its price at the time of the breach. The price being settled by the contract, which is generally the case, makes no difference, nor ought it to make any; etherwise the vendor, if the article have risen in value, would alway~ have it in his power to discharge himself from his contract, and put the enhanced value in his own pocket. Nor can it make any diffbrence in principle, whether the contract be for the sale of real or personal property, if the lands, as is the case here, have not been improved or built on. In both cases, the vendee is• entitled to have the thing agreed for; at the contract price, and to sell it himself at its increased value. If it be withheld, the vendor ought to make good to him the difference. This is not an action for eviction, nor is the Court.now prescribing the proper rule of damages in such a case.
 
 a
 

 Ru'e ofdama. ges on a breach of the contract of eale by aot delivering the article.
 

 Judgment affirmed.
 

 a
 

 As to the damages recoverable upon an eviction of real property, Vide Ante, Vol. II. p. 62. Note c.